Approved: _Rebecca Lee_
REBECCA T. DELL
Assistant United States Attorney

Before: HONORABLE KATHARINE H. PARKER
United States Magistrate Judge
Southern District of New York

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                            :
UNITED STATES OF AMERICA                    :   SEALED COMPLAINT
                                            :
            - v. -                          :   Violation of 21 U.S.C.
                                            :   § 846
KAREEM HASSAN,                              :
STEVEN HERRERA, and                         :
WAEL HAMAD,                                 :   COUNTY OF OFFENSE:
                                            :   NEW YORK
            Defendants.                     :
                                            :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

SOUTHERN DISTRICT OF NEW YORK, ss.:

JUSTIN KONG, being duly sworn, deposes and says that he is a Special Agent with Homeland Security Investigations ("HSI"), and charges as follows:

## COUNT ONE
### (Narcotics Conspiracy)

1. From at least in or around March 2021 to the present, in the Southern District of New York and elsewhere, KAREEM HASSAN, STEVEN HERRERA, and WAEL HAMAD, the defendants, and others known and unknown, intentionally and knowingly did combine, conspire, confederate, and agree together and with each other to violate the narcotics laws of the United States.

2. It was a part and an object of the conspiracy that KAREEM HASSAN, STEVEN HERRERA, and WAEL HAMAD, the defendants, and others known and unknown, would and did distribute and possess with intent to distribute a controlled substance, in violation of Title 21, United States Code, Section 841(a)(1).

3. The controlled substance that KAREEM HASSAN, STEVEN HERRERA, and WAEL HAMAD, the defendants, conspired to distribute and possess with intent to distribute was mixtures and substances containing a detectable amount of cocaine, in violation of Title 21,

United States Code, Section 841(b)(1)(c).

(Title 21, United States Code, Section 846.)

The bases for my knowledge of the foregoing charge are, in part, as follows:

4. I am a Special Agent with HSI, and I have been personally involved in the investigation of this matter. This affidavit is based upon my personal participation in the investigation, my examination of reports and records, and my conversations with other law enforcement agents and other individuals. Because this affidavit is being submitted for the limited purpose of demonstrating probable cause, it does not include all the facts that I have learned during the course of my investigation. Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

5. Since in or about January 2021, HSI and the United States Postal Inspection Service ("USPIS") have been investigating several individuals who have been conspiring to sell cocaine on two marketplaces on the dark web ("Marketplace-1" and "Marketplace-2") and mail those orders at various post offices in the New York area.[1] As described further below, KAREEM HASSAN, STEVEN HERRERA, and WAEL HAMAD, the defendants, are three individuals involved in the conspiracy.

**Residences Associated with KAREEM HASSAN, the Defendant**

6. Based on my review of postal records and records from a service provider, I have learned the following, in substance and in part:

a. An IP address ("IP Address-1") assigned to a particular apartment (the "Cherry Street Apartment") at Cherry Street in Manhattan, New York (the "Cherry Street Address") lists KAREEM HASSAN, the defendant, as the "Customer Name," the email

---

[1] Based on my training and experience, I know that the "dark web" is a colloquial name for a number of extensive, sophisticated, and widely used criminal marketplaces operating on the Internet, which allow participants to buy and sell illegal items, such as drugs, firearms, and other hazardous materials with greater anonymity than is possible on the traditional Internet. These online black market websites use a variety of technologies to ensure that communications and transactions are shielded from interception and monitoring.

2

address kareem.hassan513@gmail.com as the customer's email address (the "Hassan Email Address"), and a particular phone number as the "Daytime Telephone" (the "Hassan Phone Number").

b. HASSAN has received mail at the Cherry Street Apartment.

c. As a result, I believe HASSAN resides at and/or has access to the Cherry Street Apartment.

7. Based on my review of postal records, my and other law enforcement agents' surveillance of a building located at 79th Street in Brooklyn, New York, and my review of records from an electricity provider, I have learned the following, in substance and in part:

a. KAREEM HASSAN, the defendant, has received packages and mail at a particular apartment (the "79th Street Apartment") in a building located at 79th Street in Brooklyn, New York (the "79th Street Address").

b. HASSAN pays the electricity for the 79th Street Apartment.

c. Based on the foregoing, I believe that HASSAN rents and/or has access to the 79th Street Apartment.

8. Based on my review of department of motor vehicle records, I have learned that KAREEM HASSAN, the defendant, lists a particular address on Senator Street in Brooklyn, New York (the "Senator Street Address") as his residence on his driver's license.

### March 23, 2021 Mailing and Identification of KAREEM HASSAN, the Defendant

9. Based on my participation in this investigation, my review of law enforcement records and reports, and my and other law enforcement agents' surveillance from on or about March 23, 2021, I have learned the following, in substance and in part:

a. On or about March 23, 2021, at approximately 12:08 PM, law enforcement agents observed the following: a male ("Male-1") wearing a camouflage jacket ("Jacket-1") exited an automobile operated by the rideshare Lyft ("Lyft-1") and entered a specific post office in Brooklyn, New York ("Post Office-1"). While inside Post Office-1, Male-1 mailed approximately seven parcels. After mailing the parcels, Male-1 exited Post Office-1 and reentered

Lyft-1. After Male-1 left Post Office-1, law enforcement agents seized one of the seven parcels that Male-1 had mailed ("Parcel-1"). Pursuant to a judicially authorized search warrant, law enforcement agents opened Parcel-1, which contained a white powdery substance. The white powdery substance inside Parcel-1 field tested positive for cocaine hydrochloride.

  b. On or about March 23, 2021, at approximately 12:32 PM, law enforcement agents followed Lyft-1 to the Cherry Street Address and observed Male-1 exit Lyft-1 and enter the Cherry Street Address, which, as described above is an address where HASSAN appears to reside.

  c. After Lyft-1 left the vicinity of the Cherry Street Address, law enforcement agents conducted a traffic stop of Lyft-1, and the driver of Lyft-1 stated that Male-1's Lyft username is "Hanglow." Based on my understanding of the rideshare Lyft, I know that individuals use the Lyft application to book rides with a driver. A user's account is assigned a particular username.

10. Based on my review of Lyft records, I have learned the following, in substance and in part:

  a. On or about March 23, 2021, at approximately 12:05 PM, "Hanglow Dingus" was picked up from the 79th Street Address. The final destination of that Lyft ride was the Cherry Street Address.

  b. The email address associated with the "Hanglow Dingus" account is the Hassan Email Address, and the phone number associated with the "Hanglow Dingus" account is the Hassan Phone Number.

  c. Based on the foregoing, I believe Male-1 is HASSAN.

### The April 12, 2021 Undercover Purchase

11. Based on my participation in this investigation, my conversations with other law enforcement agents, and my review of screenshots from Marketplace-1, I have learned, in substance and in part, that, on or about April 12, 2021, an undercover law enforcement officer placed an online order for 1 gram of cocaine from Marketplace-1 ("UC Buy-1") and requested that the narcotics be sent to a particular address in Manhattan, New York ("Address-1").

4

12. Based on my participation in this investigation, my review of law enforcement records and reports, and my and other law enforcement agents' surveillance from on or about April 13, 2021, I have learned the following, in substance and in part:

    a. On or about April 13, 2021, at approximately 9:45 AM, law enforcement agents observed KAREEM HASSAN, the defendant, leave the Cherry Street Address, enter a Lyft ("Lyft-2"), travel to the 79th Street Address, and enter the 79th Street Address.[2]

    b. At approximately 12:36 PM, law enforcement agents observed HASSAN leave the 79th Street Address with a white plastic trash bag ("Bag-1") and enter another Lyft ("Lyft-3").

    c. At approximately 12:38 PM, law enforcement agents observed HASSAN exit Lyft-3 and enter Post Office-1 with Bag-1.

    d. At approximately 12:39 PM, law enforcement agents observed HASSAN mail several United States Postal Service ("USPS") flat rate envelopes that were inside Bag-1. Subsequently, HASSAN left Post Office-1 and reentered Lyft-3.

    e. After Hassan left Post Office-1, law enforcement agents found that one of the flat rate envelopes that HASSAN had mailed listed Address-1 (the address the undercover officer provided) as the recipient address ("Parcel-2"). As a result, Parcel-2 is believed to contain the contents of UC Buy-1.

    f. A white powdery substance was inside Parcel-2, and it fielded tested positive for cocaine hydrochloride.

### The April 20, 2021 Package Seizure

13. Based on my participation in this investigation, my review of law enforcement records and reports, and my and other law enforcement agents' surveillance from on or about April 20, 2021, I have learned the following, in substance and in part:

---

[2] Law enforcement identified HASSAN during the course of this surveillance based on (i) prior surveillance of HASSAN, some of which is described above and review of his photo from the Department of Motor Vehicles database; (ii) the fact that HASSAN was again observed wearing Jacket-1; and (iii) the fact that HASSAN was observed leaving the Cherry Street Address and entering the 79th Street Address—addresses associated with HASSAN as set out above.

5

a. At approximately 9:30 AM, law enforcement agents observed KAREEM HASSAN, the defendant, exit the Cherry Street Address, enter a Lyft ("Lyft-4"), travel to the 79th Street Address, and enter the 79th Street Address.

b. At approximately 11:59 AM, law enforcement agents observed another male ("Male-2") exit a Lyft ("Lyft-5") and enter the 79th Street Address with a box ("Box-1"). Subsequently, Male-2 exited the 79th Street Address with empty mail parcels, and Male-2 was no longer carrying Box-1. Male-2 placed the empty mail parcels in a recycling bin in front of the 79th Street Address and reentered Lyft-5. After Male-2 left, law enforcement agents observed that all of the empty mail parcels listed HASSAN and the Cherry Street Apartment as the recipient's name and address. Based on the foregoing, I believe that Male-2 met HASSAN inside the 79th Street Apartment.

c. At approximately 2:38 PM, law enforcement agents observed Male-2 return in a Lyft ("Lyft-6") to the 79th Street Address, reenter the building, and exit with another box (the "Box-2"). Male-2 reentered Lyft-6 and traveled to another post office in Brooklyn, New York ("Post Office-2"). While inside Post Office-2, Male-2 mailed Box-2.

d. The sender on Box-2 was STEVEN HERRERA, the defendant, and listed the Senator Street Address.[3]

e. Pursuant to a judicially authorized search warrant, law enforcement agents opened Box-2. Inside Box-2 there was a jump starter for a car. Inside the jump starter was a custom-welded metal container that was also custom wired with a trigger mechanism to open a metal panel to expose the contents of the container. Inside the metal container were (i) a padded silver mylar zipped bag that contained a cellphone ("Cellphone-1") that was not locked and a battery pack with a charging cable, and (ii) two padded envelopes.

f. Pursuant to a judicially authorized search warrant, law enforcement agents searched Cellphone-1 and found, among other things, (i) photographs of HASSAN, (ii) a photograph of the driver's license of HERRERA, (iii) emails sent from storage units which included a bill for services for HERRERA, and (iv)

---

[3] The return address of "Senetor St." is believed to contain a typo and should be "Senator St." There is no Senetor Street in Brooklyn, New York.

geolocation information that indicated that Cellphone-1 had been at the Cherry Street Address.

g. Based on my training and experience, I know that narcotics traffickers often ship narcotics through the mail in covert packaging, and, after receiving the narcotics, narcotics traffickers ship back the covert packaging. When returning the covert packaging, narcotics traffickers often include a cellphone so that the narcotics traffickers can track the location of the shipment.

h. Based on the foregoing, I believe that Box-2 was shipped in furtherance of the conspiracy.

### The April 28, 2021 Undercover Purchase

14. Based on my participation in this investigation, my conversations with other law enforcement agents, and my review of screenshots from Marketplace-1, I have learned, in substance and in part, that, on or about April 28, 2021, an undercover law enforcement officer ordered online 1 gram of cocaine from Marketplace-1 ("UC Buy-2"), and requested that the narcotics be sent to a particular address ("Address-2").

15. Based on my conversations with employees of Post Office-1 and other law enforcement agents, my surveillance of KAREEM HASSAN, the defendant, and my review of records from Lyft, I have learned the following, in substance and in part:

a. On or about May 4, 2021, at approximately at 3:30 PM, law enforcement agents were contacted by employees of Post Office-1 and informed that a male matching the description of HASSAN and wearing a camouflage jacket entered Post Office-1 and mailed several parcels.

b. Also on or about May 4, 2021, at approximately 4:05 PM, I and other law enforcement agents observed HASSAN wearing a camouflage jacket and enter the Cherry Street Address.[4]

c. On or about May 7, 2021, law enforcement agents seized one of the parcels HASSAN mailed on May 4, 2021 ("Parcel-3"). Parcel-3 was addressed to Address-2 (the address provided by the undercover officer) and believed to contain UC Buy-2.

---

[4] Based on my review of records from Lyft, I know, that at approximately 4:08 PM, HASSAN returned to the Cherry Street Address in a Lyft.

7

   d.   A white powdery substance was inside Parcel-3, and it field tested positive for cocaine hydrochloride.

### The July 12, 2021 Undercover Purchase & Identification of STEVEN HERRERA, the Defendant

   16.   Based on my participation in this investigation, my conversations with other law enforcement agents, and my review of screenshots from Marketplace-2, I have learned, in substance and in part, that, on or about July 12, 2021, an undercover law enforcement officer ordered online 1 gram of cocaine from Marketplace-2 ("UC Buy-3"), and requested that the narcotics be sent to Address-1.

   17.   Based on my participation in this investigation, my review of law enforcement records and reports, my review of surveillance footage, and my conversations with law enforcement agents and witnesses and employees of a post office in New York, New York ("Post Office-3"), I have learned the following, in substance and in part:

   a.   On or about July 13, 2021, at approximately 12:30 PM, an employee of Post Office-3 stated, in substance and in part, that an unknown male had just mailed several flat-rate envelopes matching the description of parcels previously mailed by KAREEM HASSAN, the defendant. One of the envelopes mailed by the unknown male ("Parcel-4") was addressed to Address-1 (the address provided by the undercover officer). As a result, Parcel-4 is believed to contain the contents of UC Buy-3.

   b.   Based on my review of surveillance footage from a store ("Store-1") near Post Office-3, I observed that, on July 13, 2021, at approximately 12:17 PM,[5] a male ("Male-3") entered Post Office-3 with a white plastic bag ("Bag-2") containing flat-rate envelopes and subsequently exited Post Office-3 without Bag-2.

   c.   Based on my review of surveillance footage from the Cherry Street Address, I have learned the following, in substance and in part: On or about July 13, 2021, at approximately 11:25 AM, an individual wearing the same clothes as Male-3—and, therefore, believed to be Male-3—arrived at the Cherry Street Address, took

---

[5] The time reflected on the surveillance footage is approximately 12:06 PM. However, based on my conversations with an employee at Store-1, I have learned that the surveillance footage timestamp was approximately 11 minutes slow.

8

an elevator up to the floor where the Cherry Street Apartment is located, and subsequently exited the Cherry Street Address with Bag-2. At approximately 12:09 PM, Male-3 exited the Cherry Street Address. Based on the foregoing as well as the timing of the mailing at Post Office-3, I believe that Male-3 entered the Cherry Street Apartment before mailing Parcel-4 at Post Office-3.

      d. Based on my review of records from the Cherry Street Address and my conversations with employees from the Cherry Street Address, I have learned, in substance and in part, that (i) STEVEN HERRERA, the defendant, has been given access to the Cherry Street Apartment by the tenants of the Cherry Street Apartment, and, (ii) when HERRERA was given access, HERRERA had to provide his driver's license.

      e. Based on the foregoing and my comparison of (i) a picture of HERRERA from his driver's license, and (ii) the surveillance footage of Male-3 from Store-1 and the Cherry Street Address from July 13, 2021, I believe that Male-3 is HERRERA.

      f. Based on the foregoing, I believe that, on or about July 13, 2021, HERRERA visited the Cherry Street Apartment and subsequently mailed Parcel-4 at Post Office-3.

      g. A white powdery substance was inside Parcel-4, and it field tested for cocaine hydrochloride.

### The July 23, 2021 Seizure

18. Based on my participation in this investigation, my review of law enforcement records and reports, my review of surveillance footage from the Cherry Street Address and from a post office in New York, New York ("Post Office-4"), and my conversations with law enforcement agents and employees of Post Office-4, I have learned the following, in substance and in part:

      a. On or about July 23, 2021, at approximately 11:06 AM, a male ("Male-4") entered an elevator on the same floor as the Cherry Street Apartment. Male-4 was wearing a black hat (the "Black Hat"), black t-shirt, and khaki shorts, and Male-4 was carrying two white garbage bags.

      b. On or about July 23, 2021, at approximately 11:11 AM, Male-4 entered Post Office-4 with the two white garbage bags. While inside Post Office-4, Male-4 gave the two white garbage bags to a postal employee to mail.

9

   c. After Male-4 left Post Office-4, law enforcement agents seized one parcel that Male-4 had mailed ("Parcel-5"). Pursuant to a judicially authorized search warrant, law enforcement agents opened Parcel-5, which contained 20 white pills marked with "M367." The pills were field tested, and the field test did not identify the presence of any controlled substance. The pills have been sent to a laboratory for further testing.

**The September 24, 2021 Seizure & Identification of WAEL HAMAD, the Defendant**

   19. Based on my participation in this investigation, my review of law enforcement records and reports, my review of surveillance footage from the Cherry Street Address and from Post Office-4, and my conversations with law enforcement agents and employees of Post Office-4, I have learned the following, in substance and in part:

   a. On or about September 24, 2021, at approximately 11:11 AM, a male wearing the same clothes, including the Black Hat, as Male-4 on July 23, 2021 and, therefore, believed to be Male-4, entered an elevator on the same floor as the Cherry Street Apartment. Male-4 was once again carrying two white garbage bags.

   b. On or about July 23, 2021, at approximately 11:18 AM, Male-4 entered Post Office-4 with the two white garbage bags. While inside Post Office-4, Male-4 gave the two white garbage bags to a postal employee to mail.

   c. After Male-4 left Post Office-4, law enforcement agents seized four parcels that Male-4 had mailed. Pursuant to a judicially authorized search warrant, law enforcement agents opened each parcel. Two parcels contained a white powdery substance weighing, in total, approximately 4.5 grams. The substance field tested positive for cocaine hydrochloride. One parcel contained pills, and the last parcel contained an unknown liquid.

   20. Based on my review of postal records, I know that KAREEM HASSAN, the defendant, has an account which allows him to purchase stamps online and on the phone. Between March 2021 and July 2021, HASSAN has purchased approximately 2,008 stamps. Based on my training and experience and my participation in this investigation, I believe that HASSAN is purchasing stamps to mail narcotics. Based on my discussions with a postal employee, I have

10

learned that WAEL HAMAD, the defendant, and another individual have access to HASSAN's postal account.

21. Based on my review of records from the Cherry Street Address, I know that KAREEM HASSAN and WAEL HAMAD, the defendants, are on the lease to the Cherry Street Apartment.

22. Based on my review of surveillance footage of WAEL HAMAD, the defendant, that was obtained during a routine customs baggage inspection of HAMAD's belongings at Newark Liberty International Airport on or about May 2, 2021, I observed that HAMAD was wearing a hat similar to the Black Hat worn by Male-4 on July 23, 2021 and September 24, 2021.

23. Based on the foregoing, including (i) the fact that WAEL HAMAD, the defendant, appears to be wearing the Black Hat that Male-4 wore on July 23, 2021 and September 24, 2021 and (ii) the fact that HAMAD is on the lease to the Cherry Street Apartment and Male-4 is seen entering an elevator on the same floor as the Cherry Street Apartment on July 23, 2021 and September 24, 2021, I believe that Male-4 is HAMAD.

WHEREFORE, I respectfully request that warrants be issued for the arrests of KAREEM HASSAN, STEVEN HERRERA, and WAEL HAMAD, the defendants, and that they be arrested, and imprisoned or bailed, as the case may be.

_____
JUSTIN KONG
Special Agent
Homeland Security Investigations

Sworn before me on this
5 day of October, 2021

_____
THE HONORABLE KATHARINE H. PARKER
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK